**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MNG, LLC, a Washington Limited Liability Company, PHILMON NEGUSSE, an individual, and HENOK ABRAHA, an individual,<br><br>　　　　Plaintiffs,<br>v.<br><br>MERRICK GARLAND, U.S. Attorney General, U.S. DEPARTMENT OF JUSTICE, GOVERNOR JAY INSLEE, Governor of the State of WASHINGTON, LIQUOR and CANNABIS BOARD OF THE STATE OF WASHINGTON, DAVID POSTMAN, Chair of the Liquor and Cannabis Board, RICK GARZA, Director of the Liquor Cannabis Board,<br><br>　　　　Defendants. | CAUSE NO.: 2:21-cv-1038<br><br>**COMPLAINT** |

**I. INTRODUCTION**

1.1   Plaintiffs MNG, LLC, Philmon Negusse, and Henok Abraha ("Plaintiffs") bring this Complaint against Defendants Jay Inslee, Governor of The State of Washington, the Liquor and Cannabis Board of the State of Washington, David Postman, State Liquor and Cannabis Board Chair, and Rick Garza, Director of the State Liquor and Cannabis Board ("Defendants").

1.2   Plaintiffs allege that the *Ex Parte Young* Defendants (Defendants Inslee, Postman, and Garza; hereinafter "*Ex Parte Young* Defendants") have accepted federal grant funding from the Department of Justice and are acting under color of their offices and the Laws of the State of

Washington in administering an unconstitutional and unlawful system of Marijuana regulation and licensing in violation of the Federal Controlled Substances Act ("C.S.A."), as well as the treaty obligations it was adopted to perpetuate, and the terms of their grant agreements, and that they are profiting from the licensing, manufacture and sale of a controlled substance in violation of Federal Law.

1.3     Defendants Merrick Garland and The Department of Justice have a duty to enforce Federal Law and to ensure that grant recipients comply with the contractual obligations of their grants. They are interested and necessary parties to a just adjudication of the issues herein.

1.4     In addition, the State's Marijuana licensing and permitting system has been administered in a manner that has invidiously discriminated against African Americans, including the Plaintiffs. These circumstances establish that there is an actual case or controversy between genuinely adverse parties, and declaratory and injunctive relief is appropriate.

1.5     The Federal Defendants have improperly awarded grants and federal funding to the State *Ex Parte Young* Defendants when they knew or should have known that the *Ex Parte Young* Defendants were failing to enforce the Federal Controlled Substances Act and that they were operating a profit-making scheme involving a Controlled Substance and administering it in a manner that invidiously discriminated against a protected class, including Plaintiffs.

1.6     In light of the above short, plain statement of the Plaintiffs' claims, and the facts of the instant case, Plaintiffs are entitled to the relief sought.

## II. JURISDICTION AND VENUE

2.1     This action is brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), 42 U.S.C. §§1981, 1983, and 1985, and jurisdiction of this Court is invoked under 28 U.S.C. §2201, 28 U.S.C §1331 and 28 U.S.C §1332, as well as the 5th, 9th, 10th, 11th and 14th Amendments to the U.S. Constitution, the Supremacy Clause, Obstacle Preemption, binding treaties and the *Ex Parte Young* Doctrine. Plaintiffs further invoke the diversity jurisdiction of this Court, and pendant jurisdiction to hear and decide any related claims arising under State law.

2.2     The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

2.3     Venue is proper in this judicial district because it is where substantial parts of the events or omissions giving rise to Plaintiffs' claims occurred. *See* 28 U.S.C. §1391(b).

2.4     Venue is placed in this district because the primary Defendant and Plaintiffs reside in different states and the primary Defendant, in his capacity as United States Attorney General, is located in and conducts business in the District of Columbia, and because the "State", or more properly *Ex Parte Young* Defendants, have a pattern of pervasive contact with the forum jurisdiction, and have repeatedly availed themselves of the benefit of its laws, Courts and federal grant money.

### III. PARTIES

3.1     Plaintiff Philmon Negusse is black and of African American ethnicity, is a citizen of the United States, is a resident of the State Washington, and is a resident of the city of Seattle. He has a history of interactions with the "State" (*Ex Parte Young*) Defendants' I-502 Licensing scheme and has experienced invidious racial discrimination and has been harmed by the unconstitutional application of Marijuana regulation in the State of Washington, an actual case and controversy between genuinely adverse parties, and has standing to maintain this action.

3.2     Plaintiff Henok Abraha is black and of African American ethnicity, is a citizen of the United States, is a resident of the State Washington, and is a resident of the city of Seattle. He has a history of interactions with the "State" (*Ex Parte Young*) Defendants' I-502 Licensing scheme and has experienced invidious racial discrimination and has been harmed by the unconstitutional application of Marijuana regulation in the State of Washington, an actual case and controversy between genuinely adverse parties, and has standing to maintain this action.

3.3     Defendant Merrick Garland, United States Attorney General, was at all times pertinent to the allegations of this complaint employed by the United States Government, and has awarded the *Ex Parte Young* Defendants federal grants conditioned upon lawful conduct, and compliance with Federal Law. He is being sued individually and in his official and individual/official capacity as a *Bivens* Defendant.

3.4     Defendant United States Department of Justice is an agency of the United States

of America, and has awarded the *Ex Parte Young* Defendants federal grants conditioned upon lawful conduct, and compliance with Federal Law. The United States Department of Justice is a necessary party.

3.5     Defendant Jay Inslee, Governor of The State of Washington, was at all times pertinent to the allegations of this complaint employed by the State of Washington. He is being sued individually and in his official and individual/official capacities as a *Bivens* and *Ex Parte Young* Defendant.

3.6     Defendant David Postman, Chair of the Washington State Liquor and Cannabis Board, was at all times pertinent to the allegations of this complaint employed by the State of Washington. He is being sued individually and in his official and individual/official capacities as a *Bivens* and *Ex Parte Young* Defendant.

3.7     Defendant Rick Garza, Director of the Washington State Liquor and Cannabis Board, was at all times pertinent to the allegations of this complaint employed by the State of Washington. He is being sued individually and in his official and individual/official capacities as a *Bivens* and *Ex Parte Young* Defendant.

3.8     At all times and in all actions relevant to the allegations of this Complaint, the Defendants were acting deliberately under color of law and pursuant to their authority as government officials of the State of Washington, or in the case of Defendant Merrick Garland, pursuant to his official authority as the United States Attorney General of the United States of America.

## IV. ALLEGATIONS

4.1     Plaintiffs reside in the State of Washington and bring this action seeking declaratory relief to clarify whether Defendants, acting under color of law, through Statutes passed by and after the Laws of Washington 2013 c 3 § 4 (Initiative Measure No. 502, approved November 6, 2012, "I-502"), including those appearing at RCW 69.50.325 *et seq.*, are within the constitutional bounds of federalism under the 10th Amendment in operating a federally illegal regulatory scheme by licensing and taxing the production and sale of cannabis, a federally illegal

controlled substance under the C.S.A.; and if so, whether the Defendants have acted under color of these laws to invidiously discriminate against African Americans, such as the Plaintiffs.

4.2 There is an existing case or controversy in that Washington State's regulation and taxation of the production and sale of cannabis violates the Supremacy Clause and is subject to obstacle preemption in that it is in direct violation of: Title 21 United States Code (U.S.C.) Controlled Substances Act; International Treaties; The Single Convention on Narcotic Drugs, 1961 (Articles 23, 28, 29); The Convention on Psychotropic Substances, 1971 (Article 7, Sections A – D); The Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, 1988; as well as federal banking laws prohibiting money laundering; Title 18 U.S.C. § 1956; The Bank Secrecy Act (1970); The Money Laundering Control Act (1986); The Anti-Drug Abuse Act of 1988; The Annunzio-Wylie Anti-Money Laundering Act (1992); The Money Laundering Suppression Act (1994); and The Money Laundering and Financial Crimes Strategy Act (1998).

4.3 Plaintiffs have each been involved with the Defendants' marijuana licensing scheme and have been injured and subjected to invidious racial discrimination in the application of these State Laws. This discrimination has included being denied approvals given upon the same terms to white applicants, withholding approvals, receiving violations without warning or warrant, classifications and permits withdrawn arbitrarily in a manner that white applicants were not subjected to, denial of due process and equal treatment under the law, and otherwise having been barred from participating in various aspects of the system invidiously on the basis of race.

4.1 Plaintiffs seek declaratory and injunctive relief on the matter of whether the Defendants are allowing or causing the violation of Plaintiffs' Constitutional and Civil Rights by implementing and operating this unlawful regulatory scheme in a corrupt and discriminatory manner.

4.2 On November 6, 2012, the State of Washington approved the production and sale of recreational cannabis through I-502.

4.3 Under of color of law, I-502 granted the Washington State Liquor and Cannabis Board ("WSLCB") regulatory authority over this new source of revenue for Washington State.

4.4     African Americans in Washington State were disparately impacted by cannabis prohibition through disproportionately higher rates of arrest, prosecution, conviction and incarceration for cannabis.

4.5     Despite this information being readily available, the WSLCB created their cannabis regulatory system without any protections or safeguards to prohibit further discrimination against minority class members who had been subject to systemic discrimination in the past.

4.6     Washington's illicit regulatory scheme operates in and through an environment of corruption and collusion, and unfairly discriminates against African Americans as they have against the Plaintiffs.

4.7     This has lead to the current state where African Americans are invidiously excluded from participation in the economic opportunities created by this regulatory scheme, in violation of the 14th Amendment and rights protected under 42 U.S.C §§1981, 1983, and 1985; RCW 49.60.030 and RCW.49.60.400 which prohibit discrimination; as well as RCW 49.60.030(f) which grants citizens of Washington the right to engage in commerce free from any discriminatory boycotts or blacklists.

4.8     Plaintiffs have undergone unreasonable and heightened levels of scrutiny in the navigation through the I-502 cannabis regulatory scheme that has been run afoul and to the detriment of African Americans through blatant discriminatory practices as noted below:

    a.   MNG is a marijuana retail licensee operating under Washington State Liquor and Cannabis Board License No. 41520 since November of 2014.  MNG operates under the name Kushmart and has one retail store in Everett, Washington.  Kushmart has been in the top ten of the largest retail stores in the State by gross sales since the inception of the I-502 Recreational Marijuana scheme.

    b.   Philmon Negusse is a member and a manager of MNG.  He is a black man of African American ethnicity.  MNG is also minority owned by Mr. Henok Abraha, a black man of African American ethnicity, and by Vyacheslav Ioffe, an individual of

Russian origin. MNG is the only retailer North of Renton that has African American ownership. Notably, only four out of 556 retail marijuana licensees in the state of Washington are owned by African Americans.

c. During the initial priority period for establishing retail marijuana licenses under I-502, the WSLCB favored white owned dispensaries by allowing these white owned dispensaries to sell opportunities to others while denying black owned dispensaries the same opportunities. Further, the WSLCB allowed these white shop owners to sell former employees and fake employees as "additional applicants," which granted the applicant additional licenses through the 5052 initiative, while denying black owned shops the same opportunities. This behavior by the WSLCB discriminated against black marijuana retail applicants and unjustly limited their economic opportunities.

d. The retail marijuana business is regulated by the WSLCB through its enforcement agents and officers. MNG, being located in North Renton, was under the jurisdiction of Sergeant Grassfield and Chief Nordhorn of the Defendant WSLCB, during the events at issue in this complaint (i.e., during 2015 to 2017). The WSLCB enforces State Law relating to the retail sale of marijuana, including through the issuance of warnings and administrative code violations under Washington Administrative Code (WAC) Chapter 314-55. The WSLCB also determines who may receive and renew marijuana retail licenses.

e. Shortly after obtaining its license, MNG became subject to arbitrary, excessive, and disparate enforcement actions by Defendants. That campaign, which has included multiple audits, sting operations, and raids, has been led by Sergeant Grassfield under the direction and control of Chief Nordhorn of the WSLCB in an effort to generate a basis to deny MNG renewal of its license and thereby put its store out of business.

f. In 2015, under the direction of Nordhorn, Grassfield issued six administrative violations to MNG. MNG received no warnings. In contrast to these enforcement efforts against MNG, numerous other licensees throughout Washington received

written warnings (rather than violations) for the same or similar alleged conduct.

g. The distinction between a warning and a violation is significant not only for the penalty associated with the alleged infraction but also for purposes of license renewal. WAC 314-55-045, for example, identifies rule violation standards that the WSLCB considers when determining whether to grant a new marijuana license or to renew an existing license. Under this regulation, a history of violations can provide basis for the WSCLB to deny a license.

h. The use of warnings by WSLCB is important to WSLCB and the industry it regulates, and is critical to the fair and consistent enforcement of applicable laws. Retail marijuana is a fledgling industry in Washington State and the country. Without historical experience to rely upon, the industry has been required to develop and implement protocols to ensure regulatory compliance and has necessarily relied upon inadequate but improving software to meet regulatory "tracing" requirements. Warnings serve to elicit compliance and deter violations without unfairly jeopardizing a licensee's property rights. The WSLCB's website states that warnings are used for minor offenses, while violations are saved for "major offenses and repeat offenders." This stated standard was applied to other licensees but not to MNG.

i. Most of the violations issued to MNG were not warranted or should have resulted in warnings and not violations. For example, one violation alleged that MNG had failed to include required warnings on billboard advertising, even though the billboard in fact contained the required warnings. Two other violations alleged failure to use or maintain a traceability system, when the problem resulted from the inadequacy of WSLCB-approved software and/or the incompatibility of that software with the superior software used by retail licensees, including MNG.

j. Nonetheless, in late 2015, WSLCB notified MNG that based on the six violations issued to MNG, MNG's license would not be renewed in November 2016 for the following year.

k. This action by WSLCB forced MNG to engage legal counsel and incur substantial costs challenging and appealing the alleged violations. Through that process, the WSLCB agreed to convert two of the alleged violations into warnings and MNG reluctantly stipulated to the other four violations as part of a settlement with WSLCB needed to avoid nonrenewal of its license for 2016.

l. While the four violations to which MNG stipulated are fewer than the threshold number of violations set forth in WAC 314-55-045 that could potentially prevent an applicant from receiving or renewing a license, the stipulated violations remain on MNG's violation history and, if coupled with future violations resulting from continued arbitrary, excessive, disparate and discriminatory enforcement, could result in the WSLCB seeking to suspend or refusing to renew MNG's license.

m. As a result, MNG operates daily under the prospect that Defendant WSLCB's improper and disparate enforcement could at any time result in further unwarranted violations and efforts by WSLCB to close its business. This arbitrary, discriminatory, and unreasonable regulatory environment makes it difficult for MNG to engage in meaningful long-term business planning and to enter into necessary contracts and leases needed to maintain and continue its business.

n. The arbitrary, discriminatory, and unreasonable enforcement efforts conducted by the WSLCB and its agents against MNG, through the issuance of violations, auditing, notice of non-renewal, and other associated events disparately affected MNG through time and cost of defense, which stunted MNG's ability to grow its business compared to other predominantly white owned licensees, for example, similar licenses granted in the WSLCB first round lottery. These economic effects experienced by MNG, i.e., effectively stunting MNG's ability to grow its business, continue to this day.

o. Through its disparate enforcement efforts against and issuance of violations to MNG, Defendant WSLCB and Sergeant Grassfield have demonstrated a bias against MNG and its ownership.

p. MNG has, for example, been subject to audits in both 2015 and 2016. None of the other retail stores in the top five stores by sales have been audited, and none of those other retail stores have owners who are African American.

q. Sergeant Grassfield raided an MNG promotional event. No violations were found at that event. But when Mr. Negusse sought to confer with Grassfield, Negusse was physically pushed aside by Sergeant Grassfield, who sought to confer with Mr. Ioffe, a Caucasian owner of MNG instead.

r. In an effort to disrupt MNG's business, Sergeant Grassfield has also engaged in enforcement efforts against MNG's suppliers in the parking lot outside of MNG's Kushmart store. On information and belief, those suppliers were harassed by Grassfield who sought to coax them into opening product outside of the store in violation of applicable regulations.

s. MNG undertook substantial efforts in 2016 to create and implement additional internal protocols to avoid and minimize the possibility of violations, including hiring and training additional staff and implementing new software to assist with regulatory accounting. MNG also invited WSLCB agents to provide training and education to its employees.

t. MNG received no new violations in 2016, a remarkable achievement for a store with its gross sales that now has over 25 employees. Nonetheless, Sergeant Grassfield and/or other agents at WSLCB advised the City of Everett Police Department that MNG had ten violations, prompting an objection by the City to renewal of MNG's license for the year 2017. That objection was made by the City of Everett Police Department by letter dated September 15, 2016. According to the September 15, 2016 Objection Letter, ten violations had been reported by WSLCB to the Everett Police, even though only six had been issued in 2015 and those six had been reduced to four, and even though MNG had undertaken substantial efforts in 2016 to avoid any further regulatory violations and no new violations were issued in 2016. Defendants knew or

should have known that such mis-reporting of violations to the City would result in objection to MNG's license renewal, and invited such reporting in a malicious and deliberate effort to damage MNG's business.

u. Following the City of Everett's September 15, 2016 Objection Letter, the WSLCB commenced a second audit of MNG and its Kushmart store.

v. MNG was allowed to renew its license for 2017, after no violations were uncovered by the second audit. However, notwithstanding MNG's satisfactory compliance history and compliance efforts in 2016, the WSLCB rejected applications submitted by MNG during the summer of 2016 for inclusion on two additional I-502-regulated retail cannabis licenses with "Herban Legends" and "Natural Blessings" during the 5052 initiative, during which the WSLCB expanded the number of available licenses by several hundred. MNG has not been informed of any basis in fact or law for the denial of those applications, which were contrary to the WSLCB's obligation to conduct a comprehensive, fair and impartial evaluation of the applications. Philmon Negusse, Henok Abraha, and Vyacheslaw Ioffe, the owners of MNG, were collectively rejected for inclusion on the "Herban Legends" and "Natural Blessings" licenses during this 5052 initiative. The WSLCB told MNG that Philmon Negusse needed to be removed from the application in order for the application to be approved. Essentially, Ioffe was only rejected when he pursued licenses with his black business partners Abraha and Negusse. In contrast, Abraha and Negusse were both individually rejected for inclusion on the new licenses "Herban Legends" and "Natural Blessings."

w. Defendants have also engaged in improper, unlawful and malicious conduct directed specifically at MNG's co-owner and manager, Philmon Negusse.

x. The WSLCB has informed Mr. Negusse that applications by other businesses for licenses for other stores will be denied by the WSCLB if Mr. Negusse holds an ownership interest in any business seeking such license.

y. For example, on or about July 13, 2016, Mr. Negusse and Vyacheslaw Ioffe

COMPLAINT FOR DAMAGES 11

Halverson Law, PLLC
Attorneys at Law
19655 First Ave South, #106
Normandy Park, WA 98148
Phone: 206-489-2712 Fax 206-212-4154

entered into negotiations for the purchase of interests in Ashway Properties, LLC, an entity pursuing an I-502 retail cannabis license. The WSLCB warned that if Mr. Negusse was not removed from the application, the application would be denied. No objection was made by the WSLCB to Mr. Ioffe, who is also a member of MNG and thus shares the same administrative history, but is Caucasian in ethnicity.

z. Defendants knew or should have known that this pre-judging of Mr. Negusse and informing him that the application would be denied if he was involved would result in Mr. Negusse having to withdraw from involvement with the application rather than subject the other persons interested in the application to the denial that the WSLCB indicated would be forthcoming if Mr. Negusse remained involved.

aa. Mr. Negusse has effectively been placed on a "no fly list" for marijuana business licensing. The only apparent reason: He is black and of African American ethnicity.

bb. Mr. Negusse has no criminal history. Mr. Negusse has no "background" issues that would lawfully preclude him from obtaining other licenses. MNG's violation history provides no basis to deny an application as reflected in MNG's license renewal, and another (Caucasian) owner of MNG has been allowed by the WSLCB to invest in other businesses that have been granted licenses. Indeed, Mr. Negusse has successfully operated the MNG store in the State without a single violation in 2016.

cc. On October 18, 2016, Mr. Negusse emailed the Commissioner of the WSLCB to complain about the disparate treatment and bias he has experienced. No response has been received by Mr. Negusse to this email.

dd. Defendants have violated and threaten to continue violating MNG's and Mr. Negusse's Constitutional rights, have violated and threaten to continue to violate Washington anti-discrimination laws, and have tortiously interfered with Mr. Negusse's business expectancies, all causing damage and threatening future damages to Plaintiffs.

ee. Defendants have also engaged in improper, unlawful and malicious conduct

      directed specifically at MNG's co-owner, Henok Abraha.

    ff. Defendants have violated and threaten to continue violating MNG's and Mr. Abraha's Constitutional rights, have violated and threaten to continue to violate Washington anti-discrimination laws, and have tortiously interfered with Mr. Abraha's business expectancies, all causing damage and threatening future damages to Plaintiffs.

    gg. To summarize the negative economic effects experienced by the members of MNG by virtue of the WSLCB's discriminatory actions, had the WSLCB not wrongfully refused the members of MNG from holding the additional licenses during the 5052 initiative, the members of MNG would hold 10 active operational licenses in jurisdictions that are now routinely earning $3 million USD in revenue per month.

4.9    Even the few African Americans granted license in Washington's regulated cannabis industry are forced to operate in an environment where they are invidiously over-scrutinized, overpoliced, and over-assessed for violations as highlighted above.

4.10    A large portion of the tax revenue generated by this illicit regulatory scheme is extracted from minority communities in Washington State; the same communities who were disproportionately arrested for cannabis sales and possession.

4.11    Defendants inconsistently enforced rules to the detriment of African Americans denying them their rights to due process.

4.12    Many African Americans who applied to the WSLCB for licenses were told that they did not qualify because their application was flawed or that they had tax issues.

4.13    African American applicants for recreational cannabis licenses were told that they did not meet the WSLCB's requirements; but whites with the same qualifications were approved for licensing.

4.14    In violation of their own regulations, the WSLCB enforced draft rules which had not yet been adopted to disqualify African American applicants.

4.15    White applicants with delinquent taxes were approved for licensing while African

COMPLAINT FOR DAMAGES    13

Halverson Law, PLLC
Attorneys at Law
19655 First Ave South, #106
Normandy Park, WA 98148
Phone: 206-489-2712 Fax 206-212-4154

American applicants were denied due to tax issues.

4.16 Plaintiffs' applications for retail cannabis licenses met WSLCB requirements but were denied due process and passed over for white applicants who currently own and operate lucrative enterprises, trafficking large amounts of cannabis.

4.17 Due to invidious institutionalized discrimination, white, upper-class males are being enabled to dominate and monopolize the cannabis industry in Washington, and exercise undue influence and control in the decision making of Washington's Liquor and Cannabis Board.

4.18 Years after the passage of I-502 legalizing adult use of cannabis, arrest rates for cannabis possession remain significantly higher for African American residents in Washington compared to whites, despite comparable use rates.

4.19 Of the approximate 2000 recreational cannabis licenses currently operating under color of law in Washington State's illicit regulatory system, less than 1% have African Americans as majority owners.

4.20 In 2012 when I-502 was being drafted, the State of Washington hired Sam Mendez, Executive Director Cannabis Law & Policy Project, University of Washington School of Law to help with said draft. Sam Mendez stated that the way I-502 is being drafted would leave African Americans and Latinos at a disadvantage. He was asked by the board to excuse himself from any further proceedings which pertain to the creation I-502.

4.21 Washington State refuses to adequately address these matters despite clear evidence that these issues exist, and has deliberately and systemically discriminated against the Plaintiffs and other African Americans. The Plaintiffs have exhausted their adequate remedies under Washington State law.

4.22 As a result of the acts alleged, the Defendants have implemented a State law in violation of the Supremacy Clause and violated the Constitutional and Civil Rights of the Plaintiffs under the color of law. The Plaintiffs have been denied their rights under the 14th Amendment to equal protection, their rights under the 5th Amendment to due process and subsequently denied access to economic opportunity due to a discriminatory licensing scheme.

4.23 The *Ex Parte Young* Defendants are subject to the terms of numerous federal grants and agreements with the federal government for funding from the Department of Justice.

4.24 To receive these grants and funds, the Defendants have agreed to follow all federal laws. By failing to enforce the Controlled Substances Act and by invidiously discriminating against a protected class in the marijuana licensing scheme, the *Ex Parte Young* Defendants have breached the terms of their agreements authorizing their receipt of federal funds from the Department of Justice.

4.25 Defendants Garland and the Department of Justice have a duty to ensure that those receiving grants and funds from the Department of Justice abide by the terms of their agreements.

4.26 Under the present circumstances, Defendants Garland and the Department of Justice are required by law to provide notification to the State of Washington that it has breached its contractual duties to follow and enforce the Controlled Substances Act and federal law prohibiting race-based discrimination[1], and/or restrict further funding until these problems are addressed.

**V. FIRST CAUSE OF ACTION: FEDERAL DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201**

5.1 Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

5.2 By their acts and omissions Defendants created a cause of action for a declaratory judgment under 28 U.S.C. § 2201, for which Plaintiffs are entitled to relief as requested below.

**VI. SECOND CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS: 42 U.S.C. § 1983**

6.1 Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

---

[1] All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

6.2     Defendants' actions were done under color of State law and resulted in a deprivation of Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution to substantive due process and equal protection under the law.

6.3     Defendants' conduct threatens to further interfere with Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution, including Plaintiffs' rights to substantive due process and equal protection under the law.

6.4     Defendants' actions were irrational and/or arbitrary and singled Plaintiffs out for discriminatory and disparate treatment.  That discriminatory and disparate treatment included, without limitation: (i) targeting MNG with excessive enforcement efforts; (ii) issuing violations to MNG in circumstances where other licensees would, at most, be issued warnings; (iii) mischaracterizing to the Everett Police Department and/or other authorities the nature and extent of MNG's alleged violations; (iv) denying MNG the opportunity to be included in licenses for other stores; and (v) engaging in actions designed to prevent Mr. Negusse from participating in other businesses seeking licenses or renewal thereof for which he was eligible.

6.5     Plaintiff Philmon Negusse was singled out for disparate and discriminatory treatment because he is black and of African American heritage.  Plaintiff MNG was singled out for disparate and discriminatory treatment because MNG has African American and other minority owners.

6.6     Plaintiffs have sustained actual damages as a result of Defendants' wrongful conduct.  Additionally, Defendants' actions pose a continuing threat of interference with Plaintiffs' rights.

6.7     Plaintiffs are entitled to an award of damages in an amount to be determined at trial, together with an award of reasonable attorney's fees and costs.

6.8     The Court should also issue injunctive relief in Plaintiffs' favor against Defendants, including: (i) enjoining Defendants from further discrimination against Plaintiffs because of race, creed, color, and/or national origin; (ii) enjoining Defendants from further disparate and unequal treatment of Plaintiffs in connection with the WSLCB's regulatory

enforcement and licensing practices; (iii) requiring the WSLCB to monitor its officers and agents to ensure their fair, equal and consistent enforcement of statutes and administrative regulations applicable to marijuana retailers; and (iv) invalidating those administrative violations issued to MNG prior to the filing of this Complaint that are found to have resulted from discriminatory enforcement actions and/or practices, including any violations which the trier of fact determines should have resulted in warnings and not violations.

### VII. THIRD CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1981

7.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

7.2   By their acts and omissions Defendants created a cause of action for violation of rights protected under 42 U.S.C. § 1981 for which Plaintiffs are entitled to relief as requested below.

### VIII. FOURTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1985

8.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

8.2   By their deliberate acts and omissions Defendants created a cause of action for violation of rights protected under 42 U.S.C. § 1985 for which Plaintiffs are entitled to relief as requested below.

### IX. FIFTH CAUSE OF ACTION: PENDANT STATE LAW CLAIMS

9.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

9.2   By their acts and omissions Defendants created a cause of action for violation of rights protected under pendant State Law, including RCW 49.60.030 and RCW 49.60.400, for which Plaintiffs are entitled to relief as requested below.

### X. SIXTH CAUSE OF ACTION: UNCONSTITUTIONAL GRANTS AND STATE STATUTE

10.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding

paragraphs as though fully set forth herein.

10.2   By their acts and omissions Defendants created a cause of action for their unconstitutional and continuing awards of grant money and enforcement of a State statute that is unconstitutional as written and as applied in that it violates the Supremacy Clause, is an obstacle to the enforcement of Federal Law, and is applied in a racially discriminatory manner, for which Plaintiffs are entitled to relief as requested below.

## XI. SEVENTH CAUSE OF ACTION: FEDERAL ALL WRITS ACT

11.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

11.2   By their acts and omissions Defendants created a cause of action under the Federal All Writs Act, for which Plaintiffs are entitled to relief as requested below.

## XII. EIGHTH CAUSE OF ACTION: BIVENS CLAIMS

12.1   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

12.2   By their acts and omissions Defendants created a cause of action under the provisions of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for which Plaintiffs are entitled to relief as requested below.

## XIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following relief against the Defendants jointly and severally:

A.   That the Court issue a Declaratory Judgment declaring that Defendants Garland and the Department of Justice have breached their duty to ensure that those receiving grants and funds from the Department of Justice abide by the terms of their agreements to follow all federal laws;

B.   That the Court issue a Declaratory Judgment declaring that Defendants Garland and the Department of Justice have a duty to notify the State of Washington that it has breached its contractual duties to follow the Controlled Substances Act and federal law prohibiting race-

based discrimination, and/or restrict further Department of Justice (DOJ) grants and other funding to the *Ex Parte Young* Defendants until these problems are addressed;

C.  For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from providing or accepting further DOJ federal grant funding and/or engaging in the policies, practices and conduct complained of herein;

D.  For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein and the use of federal funds to perpetrate them violate Plaintiffs' rights under the United States and Washington constitutions and the laws of Washington;

E.  For a declaratory judgment that Defendants' acts, omissions, policies, practices, procedures, and custom as described in this Complaint violate the Tenth, Eighth and Fourteenth Amendments to the Constitution, as Marijuana remains illegal under federal law, specifically, the Controlled Substances Act as well as various U.S. international treaties relating to controlled substances and multiple federal banking laws prohibiting money laundering;

F.   For the issuance of injunctive relief restraining the "State" Defendants from the use of federal DOJ grant funds and all activities in regard to their illicit licensing and taxation scheme involving the production and sale of cannabis, and requiring that they cease and desist from profiting from the sale of marijuana in the State of Washington pursuant to 18 U.S.C. § 1956;

G.  For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate the terms of the DOJ grants issued to the State of Washington through the *ex parte* Defendants, as well as Plaintiffs' rights under the Constitutions of the United States and Washington and the Laws of Washington;

H.  For declaratory relief that the "State" Defendants are ineligible for any federal law enforcement grants premised upon their compliance with federal law, as they are not in compliance with, and creating an obstacle to the enforcement of, the C.S.A.;

I.  For damages in an amount to be determined according to proof;

J.  For Plaintiffs' cost and attorneys' fees;

K. For leave to amend these pleadings to conform to the evidence as presented at trial; and

L. For such other relief as the Court may deem just and proper.

DATED this __3rd__ day of ___August___, 2021.

                                         Respectfully submitted,

                                         **HALVERSON LAW, PLLC**

By: _s/ Erik L. Halverson_
    [X] Erik L. Halverson, WSBA #48511
    **Attorneys for Plaintiffs**
    19655 First Ave. South, Suite 106
    Normandy Park, WA 98148
    Phone: 206-489-2712 | Fax: 206-212-4154